IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EDISON BREWING COMPANY LLC,**

    **Plaintiff,**

    v.

    Case No. 2:21-cv-876
    JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Chelsey M. Vascura

**GOURMET FRESH LLC,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Edison Brewing Company LLC's ("Edison Brewing Company") Motion for a Preliminary Injunction. (ECF No. 4). Defendant Gourmet Fresh LLC ("Gourmet Fresh") submitted a Response in Opposition (ECF No. 18), and Edison Brewing Company replied (ECF No. 19). The Court held an evidentiary hearing on the motion on April 8, 2021. The Parties submitted post-hearing briefing on the testimony ("Briefs") and have each responded to the other side's briefing ("Rebuttals"). (ECF Nos. 27–28, 30–31). For the reasons set forth below, Edison Brewing Company's Motion for a Preliminary Injunction is **DENIED**.

### I. Statement of Facts

**Edison Brewing Company**

William Shulze, an entrepreneur with a background in electrical engineering, owns and operates Edison Brewing Company LLC and Franklin Peak LLC. (Transcript at PageID 867–68, 886). In the summer of 2017, Shulze decided to build an office building. (*Id.* at PageID 868). He created Franklin Peak LLC, which purchased a five-acre plot of high ground in Gahanna with a view of the Columbus skyline. (*See id.* at PageID 869–70, 886). Ultimately, the office building

now includes four stories, including a fourth-floor patio and event center. (*Id.* at PageID 871). Shulze named the building the "Franklin Peak." (*See id.* at PageID 885). Desiring to attract people to the site and improve employee retention, Shulze struck upon the idea of adding a brewery. (*See id.* at 870–71). The plans called for the brewery to be built next to the office building. (*Id.* at PageID 871).

In the fall of 2017, Shulze decided to name the brewery Edison, after Thomas Edison. (*Id.* at PageID 873). He also created Edison Brewing Company LLC. (*See id.* at PageID 873–74). On November 20, 2017, Edison Brewing Company LLC filed an application for registration of the "EDISON" trademark in beer (class 32) with the U.S. Patent and Trademark Office. (Pl. Ex. 1; Transcript at PageID 880).

Construction began on the brewery and office building after a ground-breaking ceremony in October 2018. The ceremony was attended by approximately 100 people who were "cordially invited to the Franklin Peak[.]" (Pl. Ex. 13; Transcript at PageID 875, 946–47). Edison Brewing Company began appearing in articles in local newspapers and business journals. (Pl. Ex. 14; Transcript at PageID 887). At least one such article was unsolicited. (Transcript at PageID 890). Edison Brewing Company also began using social media, and it created the Edison Brewing Company Facebook page. (Pl. Ex. 11; Transcript at PageID 884). Though it is not clear whether Edison Brewing Company LLC or Franklin Peak LLC did so, an Instagram account for the event center was created and titled "The Peak[.]" (Def. Ex. 7; Transcript at PageID 949).

Construction on the brewery was delayed in 2020 due to the Coronavirus Pandemic, as the construction company experienced quarantine-related halts and Edison Brewing Company struggled to obtain necessary equipment from Italy. (Transcript at PageID 880, 891). Though delayed, the brewery opened to the public in early August of 2020, and on September 25, 2020,

Edison Brewing Company began selling its own beer. (*See* Pl. Ex. 1; Transcript at PageID 878, 880). Thereafter, on December 22, 2020, the U.S. Patent and Trademark Office approved registration of Edison Brewing Company's "EDISON" trademark in beer. (Pl. Ex. 1).

The event center, which is located on the fourth floor of the office building next to the brewery is now called "The Peak at Edison." Previously it was called the "Franklin Peak" and "The Peak." (Def. Exs. 7–8; Transcript at 943–44, 949). The first event at this event center was a Velvet Ice Cream corporate board meeting. (Transcript at PageID 896, 898). That event took place on September 22, 2020. (Pl. Ex. 16; *see* Transcript at PageID 896, 897). As consideration for its use of the venue, Velvet Ice Cream provided a quantity of ice cream. (Transcript at PageID 900–01). The second event at the event center, which occurred in October 2020, was a 50th birthday party. (*Id.* at PageID 895). Again, the consumer paid with an in-kind exchange of services. (*Id.* at PageID 928).

Meanwhile, at the brewery and biergarten, Edison Brewing Company began hosting public events. (*Id.* at PageID 901). Edison Brewing Company held an Oktoberfest on the weekend of October 9 through 11, 2020. (*Id.* at PageID 900). The brewery then hosted a Halloween party, and a New Year's party set to London time to comply with public health rules during the pandemic. (*Id.* at PageID 900–01).

**Gourmet Fresh**

John Brooks is the managing partner of several central Ohio event venues and a catering service called Gourmet Fresh. (*Id.* at PageID 1061–63). In the summer of 2019, Brooks learned of an old industrial building available in Italian Village. (*Id.* at PageID 1062–63). Brooks had long contemplated expanding his business into the downtown area, and saw this as his opportunity to

3

do so. (*Id.*) Gourmet Fresh began making plans to acquire the property and refurbish it into an event venue. (*Id.* at PageID 1063).

When Brooks announced the plans to the Gourmet Fresh staff in a meeting in early fall of 2019, they jointly selected the name Edison777 for the venue. (*Id.* at PageID 1064). Located at 777 North 4th Street, an old "Columbus Electrical Works" sign hung over the building. (*Id.* at PageID 1063–64, 1107).

Gourmet Fresh began the process of transforming the old industrial site into an event venue. On June 17, 2020, it sought approval from the Italian Village Commission to change the building's exterior by adding "777" in large white painted letters and installing a steel sign with a graphic of a lightbulb with *e*-shaped filament, "EDISON" in large font, and "Italian Village" in smaller font. (Def. Ex. 21 at 5; Transcript at 1067–69). Construction is not yet complete. (*See* Transcript at PageID 1055).

While construction continued, advertising commenced. Heather Vincent, the Director of Marketing at BTTS Holdings (a company owned by Brooks), began establishing Edison777's social media presence. (*Id.* at PageID 1021, 1024, 1066). Gourmet Fresh also began running ads for Edison777 on social media. (*Id.* at PageID 1027). And, on September 30, 2020, Gourmet Fresh began advertising Edison777 on The Knot and The Wedding Wire, the publications widely used by couples planning weddings. (Def. Ex. 23; Transcript at PageID 1033).

On December 16, 2020, Gourmet Fresh, as "Gourmet Fresh LLC dba Edison 777" entered its first contract to host a wedding at Edison777, the wedding scheduled in September 2021. (Def. Ex. 18; Transcript at PageID 993, 995–96). As part of the contract, Gourmet Fresh required a thousand-dollar deposit to secure the date. (Def. Ex. 18; Transcript at PageID 982).

**The Convergence**

In late December 2020, Edison Brewing Company's general manager, Greg Kleykamp, saw an advertisement for event booking of Edison777. (Transcript at PageID 966–67). On January 3, 2021, Kleykamp and other staff brought the advertisement to Shulze's attention. (*Id.* at PageID 909). The two venues are roughly 10 miles apart.

According to Edison Brewing Company, people began mistaking it and Edison777. On one occasion, a saleswoman came to Edison Brewing Company attempting to sell merchandise based on an ad for Edison777 she saw on The Knot. (Transcript at PageID 968–69). Edison Brewing Company does not advertise on The Knot. (*Id.*) A photographer who did work for Edison Brewing Company similarly mistook the Edison777 ad on The Knot as an ad for Edison Brewing Company. (*Id.* at PageID 970–71).

On another occasion a couple considering a Bar Mitzvah at the brewery drove to the Edison777 location in Italian Village. (*Id.* at PageID 969). And, a couple looking for a wedding reception venue apparently saw the Edison777 ad on The Knot and contacted Edison Brewing Company for a tour. (*Id.* at PageID 971). During the tour, when the couple asked about any affiliation between Edison777 and Edison Brewing Company, Edison Brewing Company clarified that the two were not affiliated. (*Id.*) Lastly, during meetings between Edison Brewing Company and caterers, two of the caterers asked if Edison777 and Edison Brewing Company were affiliated. (*Id.* at PageID 971–72).

On March 1, 2021, Edison Brewing Company filed a Complaint against Gourmet Fresh in this Court alleging trademark infringement and related claims under Ohio law. (ECF No. 1). The following week Edison Brewing Company moved for a preliminary injunction. (ECF No. 4). On March 16, 2021, the Facebook page originally titled "Franklin Peak" was changed to "The Peak

at Edison." (Def. Ex. 6; Transcript at PageID 943–944). Close in time, advertisements for "The Peak at Edison" appeared on The Knot and The Wedding Wire. (Transcript at PageID 903–05). Notably, Edison Brewing Company does not advertise "Edison Brewing Company" and the brewery on those sites. (*Id.* at PageID 932–933).

Following the March 8, 2021 Motion for a Preliminary Injunction, (ECF No. 4), Gourmet Fresh responded, (ECF No. 18), and Edison Brewing Company replied (ECF No. 19). This Court held a preliminary injunction hearing on April 8, 2021. (ECF No. 22). Thereafter, and as directed, the Parties both filed briefs and rebuttals. (ECF Nos. 27, 28, 30, 31). Edison Brewing Company's Motion for Preliminary Injunction is now ripe for review. (ECF No. 4).

## II. Statement of Law

Rule 65 of the Federal Rules of Civil Procedure provides for injunctive relief when a party believes it will suffer immediate and irreparable injury, loss, or damage. Still, an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to issue a preliminary injunction, the Court must balance four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id*. (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). These four considerations are balancing factors, not prerequisites that must be met. *Id*. (citing *United Food & Com. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998)).

### III.     Analysis

Edison Brewing Company submits that all four factors weigh in favor of a preliminary injunction.

**1.  Likelihood of Success on the Merits**

In order to succeed on a trademark infringement claim under the Lanham Act and the related claims under Ohio law, Edison Brewing Company must establish that "(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. 1114(1)); *see also ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) ("[T]rademark claims under Ohio law follow the same analysis as those under the Lanham Act.").

One acquires ownership of a trademark or service mark not by registering the mark, but through "prior appropriation and actual use in the market." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991); *see also Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054 (6th Cir. 1999) ("Rights to service marks are acquired and protected in the same way as rights to trademarks."). Regarding services, relevant here a mark is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." 15 U.S.C. § 1127. "Because product use, rather than product-related registration, marks the salient indicator of ownership in trademark-infringement actions," trademark ownership may extend with use to goods beyond those covered by the product-related registration. *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 429 (6th Cir. 2016) (agreeing with the district court's finding that the trademark extended beyond films and DVDs, for while the registered use was for films and DVDs the actual use extended to a wider range of

products). However, the use must be "deliberate and continuous, not sporadic, casual or transitory." *Circuit City Stores*, 165 F.3d at 1055.

Edison Brewing Company has not established that the registered trademark it owns covers the relevant market. Edison Brewing Company owns the trademark "EDISON" as it relates to beer. In contrast, Gourmet Fresh's Edison777 is a private event venue that primarily hosts wedding receptions. Thus, in this case, the relevant market is the market for private-event venue services.[1] Edison Brewing Company has not shown actual use of the trademark "EDISON" in the market for private-event venue services.

Edison Brewing Company contends that it first used the "EDISON" mark in relation to the Velvet Ice Cream board meeting at the event center in October of 2020, and that Gourmet Fresh has not yet hosted any events, making Edison Brewing Company the prior appropriator or "senior user." (Pl. Brief at 5–6, ECF No. 28). Gourmet Fresh counters that Edison Brewing Company cannot rely on events held at the event center because that is owned and operated by Franklin Peak LLC, a non-party. (Def. Rebuttal at 3, ECF No. 30). Gourmet Fresh alternatively contends that the October events at the event center do not create rights in the term "Edison" in connection with private venue services because, at that time, "Edison" was not incorporated into the branding of the event center. (Def. Brief at 3, ECF No. 27). Gourmet Fresh's counterarguments are well taken.

Edison Brewing Company has not persuaded the Court that it can properly rely on the events that took place at the next-door office building's event center. Franklin Peak LLC owns the office building in which the event center is located. (Transcript at PageID 886). Franklin Peak LLC filed an application with the U.S. Patent and Trademark office to register "THE PEAK" as a service

---

[1] Gourmet Fresh does not presently dispute Edison Brewing Company's ownership rights over the term EDISON as it relates to beer but does dispute that it extends beyond beer. (Def. Resp. at 9, ECF No. 18).

mark for event planning and hosting, among other things. (Pl. Ex. 3; Transcript at PageID 926–27). And, in that application, Franklin Peak LLC stated that the mark was first used in commerce in October 2020. (Pl. Ex. 3). Though the record includes testimony that Franklin Peak LLC is merely the landowner while Edison Brewing Company is the service provider, that testimony contradicts Franklin Peak LLC's trademark application. (*Compare* Transcript at PageID 886 *with* Pl. Ex. 3). Edison Brewing Company has not established that it, rather than Franklin Peak LLC, owns and operates the event center. Thus, Edison Brewing Company cannot use the event center to establish rights in the EDISON mark at this juncture.

For present purposes Edison Brewing Company must rely on the brewery and biergarten to establish its first use of the EDISON mark when rendering private venue services. The record contains no evidence that there had been any private events at the brewery or biergarten as of the hearing date. (Transcript at PageID 927). While there were a number of public events such as an Oktoberfest, Edison Brewing Company has not established that such events expand Edison Brewing Company's trademark into the realm of private venue services.

Even if the Court considers the services rendered at the event center, Edison Brewing Company has not proven that the EDISON mark was used during the October bookings. The evidence in the record indicates that, as of October 2020, Edison Brewing Company had not yet settled on a name or mark for the event center. (Def. Exs. 7–8; Transcript at PageID 943–44, 949). At the time, the event center was referred to as the "Franklin Peak" or simply "The Peak." (*Id.*) There is no testimony that the venue was deliberately and continuously referenced as "The Peak at Edison."[2] Because Edison Brewing Company has not proven that the EDISON mark was used

---

[2] Though a recent screenshot of a Facebook page appears to show a post by "The Peak at Edison" from November 2019, the exhibit only shows the page as it appeared at the time of the screenshot—not the time of the original post. (*See* Pl. Ex. 12; Transcript at PageID 945). Shulze could not state whether the current name of the Facebook page, "The Peak at Edison", was also the name of the page in November of

during the sale of private venue services in October, rendering services at that time did not create ownership rights in the unused service mark.

To summarize, Edison Brewing Company has not proven that as of the time of the preliminary injunction hearing, its ownership rights to the EDISON mark extended into private venue services. Edison Brewing Company had not rendered private venue services at the brewery and biergarten. And even assuming that it was Edison Brewing Company that used the event center to host private events, the Plaintiff has not shown that it used the EDISON mark during the sale or advertisement of such services rendered in October 2020 at the event center. As such, Edison Brewing Company has not proven that its trademark extends into private venue services.

Because Edison Brewing Company has not established that its ownership of the registered EDISON mark extends into the relevant market, Edison Brewing Company has not shown a strong likelihood of success on the merits of its trademark infringement claims.[3]

### 2. Irreparable Harm to Edison Brewing Company

Edison Brewing Company contents that if a preliminary injunction is not issued before Edison777 opens for its first event, Edison Brewing Company will lose control over the quality of services offered under the EDISON mark and could lose goodwill. (Pl. Brief at 14, ECF No. 28). As an example, it suggests that a hypothetical dissatisfied customer of Gourmet Fresh could mistakenly speak or write critically about Edison Brewing Company. (*Id.*) Gourmet Fresh responds that loss of goodwill because of Gourmet Fresh's use is unlikely, and over 100 other businesses in Ohio use the name Edison. (Def. Brief at 13, ECF No. 27). Gourmet Fresh further

---

2019. (Transcript at PageID 945–46). However, Defendant's Exhibit 6 shows the Facebook page's name change history, revealing that the name was changed from "Franklin Peak" to "The Peak at Edison" on March 16, 2021. (Def. Ex. 6; Transcript at PageID 943–44).

[3] Consequently, the Court sees no jurisprudential value in analyzing the *Frisch's Rest. v. Elby's Big Boy of Steubenville*, 670 F.2d 642, 648 (1982) factors.

submits that Edison Brewing Company has not suffered irreparable harm but has rather used the opportunity to promote its business to Gourmet Fresh's potential customers. (*Id.* at 13–14).

Assuming Edison Brewing Company can establish that its ownership of the mark does extend into private venue services, irreparable harm appears probable. Courts have previously found that the intangible assets protected by a trademarks, such as "reputation and goodwill," are "by their very nature irreparable . . . ." *Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743, 756 (S.D. Ohio 2010) (quoting *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982)). The Court agrees with Edison Brewing Company that Gourmet Fresh's use of Edison777 would result in Edison Brewing Company's loss of control over its reputation. Accordingly, this factor weighs in Edison Brewing Company's favor.

3. **Substantial Harm to Gourmet Fresh**

The Court must also consider the amount of harm that a preliminary injunction would cause to Gourmet Fresh. Gourmet Fresh argues that it would suffer substantial harm from a preliminary injunction for two primary reasons. First, Gourmet Fresh has expended significant sums of money marketing and advertising its Edison777 venue, and the costs associated with recreating its image under a new name would be significant. Second, Gourmet Fresh is concerned that clients and contractors will interpret the name change as indicating trouble for the venue and "walk." (Def. Brief at 15–16, ECF No. 17(citing Transcript at PageID 1075)). Edison Brewing Company contends that Gourmet Fresh's arguments are speculative, and that any harm is Gourmet Fresh's own fault for not desisting in its use of the mark. The Court agrees with Gourmet Fresh's first argument.

The record reveals that a preliminary injunction could prove costly for Gourmet Fresh, upending Gourmet Fresh's marketing and imaging of Edison777. Gourmet Fresh has already spent

substantial sums marketing, advertising, and creating an image for the Edison777 venue. (Def. Ex. 20; Transcript at PageID 1039–40). A name change would be accompanied by a re-branding and the associated costs. (*See id.* at PageID 1039). Gourmet Fresh would have to design and order a new sign for the venue and obtain approval for said sign from the Italian Village Commission. (*Id.* at PageID 1077). Gourmet Fresh would also have to expend resources revamping or recreating its marketing campaign. (*See id.* at PageID 1039). Simply put, Gourmet Fresh would be spending more money while moving further from its brand-building objective.

Based on the evidence in the record, the Court finds that a preliminary injunction would cause Gourmet Fresh substantial harm. This consideration weighs in Gourmet Fresh's favor.

**4. Public Interest**

Edison Brewing Company argues that the public interest in avoiding consumer confusion weighs in favor of granting a preliminary injunction. (Pl. Brief at 15, ECF No. 28). Gourmet Fresh responds that the public interest would not be served by "prevent[ing] an entity from doing something that it has the legal right to do." (Def. Brief at 16, ECF No. 27). Because Edison Brewing Company has not proven ownership of a service mark in "EDISON" covering private event venues, the Court cannot agree that public interest favors the granting of a preliminary injunction.

### IV. Conclusion

On balance, the Court concludes that a preliminary injunction is not warranted. While Edison Brewing Company has shown that it would suffer irreparable harm if Gourmet Fresh continues to use the mark and Edison Brewing Company succeeds in its trademark infringement claims, Edison Brewing Company has not shown a strong likelihood of success on the merits.

Moreover, a preliminary injunction would cause substantial harm to Gourmet Fresh. Under these circumstances, a preliminary injunction is not in the public interest.

For the reasons stated above, the Court **DENIES** Plaintiff Edison Brewing Company LLC's Motion for a Preliminary Injunction. (ECF No. 4).

**IT IS SO ORDERED.**

**5/19/2021**　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**